POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK STAUBER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TRILLER GROUP INC., ROBERT E. DIAMOND, JR., WING FAI NG, and DESMOND PEI HUANG SHU,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Derek Stauber ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United

States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Triller Group Inc. ("Triller" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Triller securities between October 16, 2024 and December 29, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Triller was formerly known as AGBA Group Holding Limited ("AGBA"), and operated as a wealth management and healthcare institution, initially based in Hong Kong and organized under the laws of the British Virgin Islands.

3. On October 15, 2024, AGBA completed a merger (the "Merger") by and between itself and, *inter alia*, Triller Corp. ("Legacy Triller"), a Delaware

corporation that operated as a purported next generation, artificial intelligence-("AI") powered, social media and live-streaming event platform for creators. As a result of the Merger, *inter alia*, AGBA domesticated to the U.S. as a Delaware corporation, Legacy Triller become a wholly owned subsidiary of AGBA, AGBA changed its name to "Triller Group Inc.", and the combined Company purportedly began operating both AGBA's and Legacy Triller's respective businesses.

4. On October 16, 2024, the post-Merger Company's securities began trading on the Nasdaq Capital Market ("NASDAQ"), thereby subjecting the Company to the NASDAQ's listing and periodic filing requirements, including the requirement to timely file quarterly and annual reports with the SEC. Although the proxy materials for the Merger disclosed material weaknesses and deficiencies in internal control over financial reporting that ***could*** negatively impact Defendants' ability to comply with related listing requirements, these risks were ***specifically*** attributed to ***Legacy Triller's*** business and operations, as opposed to AGBA or the combined Company.

5. At all relevant times leading up to and following the Merger, the Company touted the various Legacy Triller assets purportedly acquired in the Merger, including, *inter alia*, Bare Knuckle Fighting Championship ("BKFC"), which stages live and streamed combat sports events, and which the Company touted as "the fastest-growing combat league in the industry."

6. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Triller's control over and consolidation of BKFC was tenuous, overstated, and/or non-existent; (ii) Triller could not timely file one or more of its periodic financial reports with the SEC as required by the NASDAQ's listing requirements, in part, because of accounting issues related to the foregoing; (iii) as a result of all the foregoing, Triller was at an increased risk of being delisted from the NASDAQ; (iv) accordingly, Triller's disclosure controls and procedures were deficient, the full scope and severity of issues with its financial controls were understated, and the overall benefits of the Merger were overstated; (v) Defendants likewise overstated Triller's ability to address its non-compliance with the NASDAQ's listing requirements; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

7. The truth began to emerge on March 31, 2025, when Triller filed a Form NT 10-K with the SEC, disclosing its inability to timely file its annual report on Form 10-K for the quarter and year ended December 31, 2024 (the "2024 10-K") "without unreasonable effort or expense" "because it requires additional time to finalize its financial statements to be included in such Form 10-K."

8. On this news, Triller's stock price fell $1.40 per share, or 17.95%, to close at $6.40 per share on April 1, 2025.

9. On April 23, 2025, Triller issued a press release announcing its receipt of a delinquency notification letter from the Listing Qualifications Staff of NASDAQ (the "NASDAQ Staff") because of the Company's failure to timely file the 2024 10-K with the SEC. The same press release claimed that Triller expected to file the 2024 10-K with the SEC within 60 calendar days of receipt of the letter.

10. On this news, Triller's stock price fell $0.50 per share, or 3.5%, to close at $13.80 per share on April 24, 2025.

11. On May 23, 2025, Triller issued a press release announcing its receipt of another delinquency notification letter from the NASDAQ Staff because of its failure to timely file its quarterly report on Form 10-Q for its first quarter ended March 31, 2025 (the "Q1 2025 10-Q") with the SEC.

12. On this news, Triller's stock price fell $1.50 per share, or 19.74%, to close at $6.10 per share on May 27, 2025, the next trading day.

13. On August 22, 2025, Triller issued a press release announcing its receipt of another delinquency notification letter from the NASDAQ Staff because of its failure to timely file its 2024 10-K, Q1 2025 10-Q, and quarterly report on Form 10-Q for its second quarter ended June 30, 2025 (the "Q2 2025 10-Q") with the SEC. The press release assured investors that "[t]he Company is working diligently to complete its Delinquent Filings and expects to file its Delinquent Filings as soon as practicable", while reassuring investors that, "[o]n August 19, 2025, the Company received an extension letter . . . from Nasdaq, which has granted

a further extension of time to enable the Company to file the Delinquent Filings on or before October 13, 2025."

14. On October 20, 2025, Triller issued a press release announcing its receipt of a delisting determination letter from the NASDAQ Staff because of its failure to timely file its 2024 10-K, Q1 2025 10-Q, and Q2 2025 10-Q with the SEC. This press release, too, assured investors that Triller was taking necessary steps to prevent the NASDAQ from delisting its securities.

15. On November 21, 2025, Triller issued a press release announcing its receipt of an additional delisting determination letter from the NASDAQ Staff because of its failure to timely file its quarterly report on Form 10-Q for its third quarter ended September 30, 2025 (the "Q3 2025 10-Q") with the SEC.

16. On this news, Triller's stock price fell $0.71 per share, or 14.7%, to close at $4.12 per share on November 24, 2025, the next trading day.

17. Then, on December 30, 2025, Triller issued a press release announcing its receipt of "a determination letter from a Nasdaq Hearings Panel on December 26, 2025, confirming the suspension of trading on the Nasdaq Stock Market effective at the open of the market on December 30, 2025 and delisting of the Company's securities", "stem[ming] from the Company not having been able to file two periodic reports by a deadline of December 24, 2025 set by the Hearings Panel." The press release further disclosed that "[t]he filing delay is attributable primarily

to one remaining technical matter involving the consolidation of accounts for a U.S.-based operation within Triller Group"—not yet disclosed to be BKFC.

18. On this news, Triller's stock price fell $3.38 per share, or ***91.35%***, over the following two trading sessions, to close at $0.32 per share on December 31, 2025.

19. On January 26, 2026, Triller filed a current report on Form 8-K with the SEC, finally disclosing that BKFC "should be deconsolidated in the Company's consolidated financial statements form [*sic*] the acquisition date by AGBA . . . on October 15, 2024 (the 'Acquisition Date')." The filing explained that, "[w]hile the Company held a majority equity interest in BKFC from the Acquisition Date, it lost the control over the BKFC and no longer possessed the power to direct the activities or key decisions that most significantly impacted BKFC's economic performance, as required for consolidation under ASC 810, Consolidation." Accordingly, "[b]ased on the control analysis, the Company . . . accounted its investment in BKFC at cost under ASC 321, from the Acquisition Date, rather than consolidating BKFC as a subsidiary in its consolidated financial statements."

20. The same day, Triller finally filed its 2024 10-K, Q1 2025 10-Q, Q2 2025 10-Q, and Q3 2025 10-Q with the SEC. The 2024 10-K belatedly disclosed that, "[a]s of December 31, ***2024***, our management assessed the effectiveness of our

internal control over financial reporting"[1] and "identified a material weakness related to the Company's failure to properly evaluate and apply consolidation accounting standards to the investment in [BKFC], whereby BKFC should be classified as investment at cost less impairment in the Company's consolidated financial statements for the acquisition by the Company on October 15, 2024."

21. Triller's securities were ultimately suspended from trading on the NASDAQ from December 30, 2025 to April 15, 2026—the day after the Company satisfied the NASDAQ's conditions to resume trading by demonstrating its current compliance with the NASDAQ's listing rules.

22. Triller most recently received a notice of non-compliance from the NASDAQ Staff on September 2, 2026 and, as of the time of the filing of this Complaint, its common stock currently trades for pennies.

23. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

24. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

---

[1] All emphases herein are added unless otherwise indicated.

25. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

26. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Triller is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

27. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

28. Plaintiff, as set forth in the attached Certification, acquired Triller securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

29. Defendant Triller is a Delaware corporation with principal executive offices located at 7119 West Sunset Boulevard, Suite 782, Los Angeles, California 90046. The Company's common stock and warrants trade in an efficient market on the NASDAQ under the ticker symbols "ILLR" and "ILLRW", respectively.

30. Defendant Robert E. Diamond, Jr. ("Diamond") served as Chairman of Triller's Board of Directors until December 12, 2024. During the Class Period,

Defendant Diamond sold over a million shares of the Company's common stock, enriching himself by over $2 million.

31. Defendant Wing Fai Ng ("Ng") has served as Triller's Chief Executive Officer and Executive Director at all relevant times.

32. Defendant Desmond Pei Huang Shu ("Shu") has served as Triller's Acting Chief Financial Officer at all relevant times.

33. Defendants Diamond, Ng, and Shu are collectively referred to herein as the "Individual Defendants".

34. The Individual Defendants possessed the power and authority to control the contents of Triller's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Triller's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Triller, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

35. Triller and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

36. Triller was formerly known as "AGBA Group Holding Limited", and operated as a wealth management and healthcare institution, initially based in Hong Kong and organized under the laws of the British Virgin Islands.

37. On April 18, 2024, AGBA and Legacy Triller issued a joint press release announcing that they had entered into a definitive merger agreement to combine AGBA, "the leading one-stop financial supermarket in Hong Kong," with Legacy Triller, "the leading Artificial Intelligence-driven . . . social video platform", asserting that the Merger "will result in a valuation of the combined company at approximately ***$4 billion*** on a pro-forma basis." The press release further represented that "[t]his groundbreaking merger combines AGBA's ***financial expertise*** with Triller's cutting-edge AI-driven content creation and SaaS capabilities, aiming to transform global digital ecosystems."

38. On September 3, 2024—following several exchanged letters with the SEC regarding the sufficiency of information and disclosures included in its proposed draft proxy statements for the Merger on Schedule 14A—AGBA filed a letter with the SEC, notifying the agency that, as of June 28, 2024, it qualified as a "Foreign Private Issuer" as defined under the Exchange Act. As a result, AGBA was now "exempt from the proxy rules under Rule 3a12-3(b) of the Exchange Act", would "file the relevant materials for its upcoming extraordinary general meeting

of shareholders" to approve the Merger (the "Extraordinary General Meeting") "with a report on Form 6-K" rather than via a proxy statement on Schedule 14A, and, "[a]ccordingly, on behalf of AGBA, . . . request[ed] the [SEC] to treat the 14A Proxy Statement as having been withdrawn and of no further force or effect."

39. On September 5, 2024, AGBA filed a notice and accompanying proxy statement for the Extraordinary General Meeting as attachments to a report of foreign private issuer on Form 6-K with the SEC.

40. On September 19, 2024, Triller issued a press release announcing that, at the Extraordinary General Meeting, "AGBA's shareholders resoundingly approved all proposals put forth for vote and moved AGBA's merger with Triller Corp. to its final stage of completion."

41. On October 15, 2024, AGBA completed the Merger by and between itself and, *inter alia*, Legacy Triller. As a result of the Merger, *inter alia*, AGBA domesticated to the U.S. as a Delaware corporation, Legacy Triller become a wholly owned subsidiary of AGBA, AGBA changed its name to "Triller Group Inc.", and the combined Company purportedly began operating both AGBA's and Legacy Triller's respective businesses.

42. On October 16, 2024, the post-Merger Company's securities began trading on the NASDAQ, thereby subjecting the Company to the NASDAQ's listing and periodic filing requirements, including the requirement to timely file quarterly and annual reports with the SEC. Although the proxy materials for the

Merger disclosed material weaknesses and deficiencies in internal control over financial reporting that ***could*** negatively impact Defendants' ability to comply with related listing requirements, these risks were ***specifically*** attributed to ***Legacy Triller's*** business and operations, as opposed to AGBA or the combined Company.

43. At all relevant times leading up to and following the Merger, the Company touted the various Legacy Triller assets purportedly acquired in the Merger, including, *inter alia*, BKFC, which stages live and streamed combat sports events, and which the Company touted as "the fastest-growing combat league in the industry."

**Materially False and Misleading Statements**

44. The Class Period begins on October 16, 2024, the day after Triller issued a press release during post-market hours announcing the completion of the Merger. The press release quoted Defendant Diamond as touting the Legacy Triller assets purportedly acquired in the Merger, including BKFC, stating:

> This merger is terrific news for both the users and the content creators on our app. Whether they are fans of BKFC, or they watch sports and entertainment events around the world on TrillerTV, or are using our brand and creator tools to find their audience, they now have in Triller an innovative, exciting partner.

45. On October 30, 2024, Triller issued a press release "announc[ing] the release of its latest Fact Sheet, providing initial insights into the Company's mission to become the next generation Entertainment Platform." The press release stated that "[t]he Company already has a strong foundation with powerful assets and

brands" including, *inter alia*, "content and events (BKFC)", and that, "[a]s Triller Group connects and integrates these underleveraged assets, Triller Group will start to occupy a truly unique position as an entertainment platform, translating into unparalleled value for all our stakeholders."

46. The same press release quoted Defendant Diamond as touting, *inter alia*, "the disruptive fighting brand in BKFC," and his "excite[ment] about our future prospects, as an App, as a brand and as a group of leading-edge companies[.]"

47. On November 14, 2024, Triller filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its third quarter ended September 30, 2024 (the "Q3 2024 10-Q"). The Q3 2024 10-Q stated, *inter alia*:

> Our management, with the participation and supervision of our Chief Executive Officer and our Chief Financial Officer, have evaluated our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the [Exchange Act] as of the end of the period covered by this Quarterly Report on Form 10-Q. Based on that evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of the period covered by this Quarterly Report on Form 10-Q, ***our disclosure controls and procedures are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in SEC rules and forms***, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure.

48. The Q3 2024 10-Q also stated, in relevant part, that "[d]uring the most recently completed fiscal quarter, there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to

materially affect, our internal control over financial reporting", and that "[w]e intend to continue to monitor and upgrade our internal controls as necessary or appropriate for our business[.]"

49. Appended as exhibits to the Q3 2024 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Ng and Shu certified, in relevant part, that the Q3 2024 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

50. On December 20, 2024, Triller issued a press release announcing certain business updates that Company management had highlighted at its investor day event. The press release touted BKFC's growth and future business prospects, stating, in relevant part:

> [BKFC] . . . reach[ed] over 250 million fans across 60 countries in 2024. Looking ahead to 2025, BKFC is gearing up for even greater heights with an exclusive contract in the works with a global streaming provider, an exhilarating new event featuring a jaw-dropping $25 million prize, and a slew of partnerships designed to amplify viewership and revenue.

51. On February 12, 2025, Triller issued a press release announcing its participation in a bell ringing ceremony at the NASDAQ, stating, in relevant part:

> The bell ringing ceremony confirms Triller Group's commitment to engaging with its investors. On the heels of its recent successful $50 million private placement, 2025 is poised to become a transformational

> year for the Company . . . . On its path to long-term growth and success, the Company is attracting top talent to help it realize its mission.

52. On February 19, 2025, Triller issued a press release touting the purported success of its four verticals, as highlighted at the Company's NASDAQ bell ringing ceremony. The press release stated, in relevant part:

> Triller . . . highlighted its growing success across its four verticals during Nasdaq's Opening Bell ceremony on February 18, 2025. Triller Group leadership, led by Group CEO Wing-Fai Ng and App CEO Sean Kim, highlighted recent successes and previewed the company's strategic vision for the future of the Triller app, TrillerTV, ***BKFC***, and Triller's marketing tools.
>
> * * *
>
> In addition to the app's plans to offer creators vast monetization opportunities, ***Triller's opening bell ceremony also highlighted the growing popularity of its BKFC vertical as one of the largest fight promotions in the world,*** second only to the UFC. In 2024, BKFC generated over 10 billion impressions, amassed 50 million live event viewers, and hosted 200,000 live event attendees. TrillerTV, where many of BKFC's events are streamed, has 7 million current users and streamed 3,000 live events globally in 2024.

53. On February 27, 2025, Triller issued a press release announcing "its latest investor presentation showcasing once-in-a-lifetime opportunities within the rapidly expanding Creator Economy." The press release touted BKFC's "thriving" business and Triller's ability to "unlock tremendous value" from it "[b]y integrating [it] more closely" and "following a proven industry playbook."

54. The press release also quoted Defendant Ng as stating, in relevant part:

> Our latest investor presentation outlines our vision and strategy, illustrating how we plan to capitalize on the immense potential that lies

> ahead. ***Together, we are not just participating in this growth; we are leading it.***

55. The statements referenced in ¶¶ 44-54 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Triller's control over and consolidation of BKFC was tenuous, overstated, and/or non-existent; (ii) Triller could not timely file one or more of its periodic financial reports with the SEC as required by the NASDAQ's listing requirements, in part, because of accounting issues related to the foregoing; (iii) as a result of all the foregoing, Triller was at an increased risk of being delisted from the NASDAQ; (iv) accordingly, Triller's disclosure controls and procedures were deficient, the full scope and severity of issues with its financial controls were understated, and the overall benefits of the Merger were overstated; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**<u>The Truth Begins to Emerge</u>**

56. The truth began to emerge on March 31, 2025, when Triller filed a Form NT 10-K with the SEC during post-market hours, notifying the SEC of its inability to timely file its 2024 10-K. The filing disclosed, in relevant part:

> The [Company] has determined that ***it is unable, without unreasonable effort or expense, to file its Annual Report on Form 10-K for the year***

> ***ended December 31, 2024 by the prescribed due date because it requires additional time to finalize its financial statements to be included in such Form 10-K.*** In accordance with Rule 12b-25 of the Securities Exchange Act of 1934, ***the [Company] will file its Form 10-K as soon as practicable***. There can be no guarantee that the [Company] will file its Form 10-K on a timely basis, which could result in the Form 10-K not being filed within the 15 additional days provided by Rule 12b-25.

57. On this news, Triller's stock price fell $1.40 per share, or 17.95%, to close at $6.40 per share on April 1, 2025.

58. Then, on April 23, 2025, Triller issued a press release during post-market hours announcing its receipt of a delinquency notification letter from the NASDAQ Staff due to its failure to timely file its 2024 10-K with the SEC. The press release stated, *inter alia*:

> [O]n April 17, 2025, [Triller] received a delinquency notification letter from the Listing Qualifications Staff of the Nasdaq Stock Market LLC ("Nasdaq") due to the Company's non-compliance with Nasdaq Listing Rule 5250(c)(1) (the "Listing Rule") as a result of the Company's failure to timely file its Annual Report on Form 10-K for the period ended December 31, 2024 (the "Filing"). The Listing Rule requires listed companies to timely file all required periodic financial reports with the Securities and Exchange Commission (the "SEC").
>
> This Notice has no immediate effect on the listing of the Company's securities on Nasdaq. However, if the Company fails to timely regain compliance with the Rule, the Company's securities will be subject to delisting from Nasdaq.
>
> The Notice provides that the Company has 60 calendar days to submit to Nasdaq a plan to regain compliance with the Nasdaq Listing Rule.

59. On this news, Triller's stock price fell $0.50 per share, or 3.5%, to close at $13.80 per share on April 24, 2025.

60. Despite the foregoing declines in the Company's stock price, Triller securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, BKFC, Triller's post-Merger business and financial prospects, and its ability to address its non-compliance with the NASDAQ's listing standards.

61. For example, the same April 23, 2025 press release cited above touted Triller's ability to address the NASDAQ Staff's letter, stating, in relevant part:

> If Nasdaq accepts the Company's plan, then Nasdaq may grant the Company up to 180 calendar days from the Filing's due date, or until October 13, 2025, to regain compliance. If Nasdaq does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a Nasdaq Hearings Panel.
>
> ***The Company is working diligently to complete its Form 10-K and expects to file its Form 10-K within the 60-day period described above, which would eliminate the need for the Company to submit a formal plan to regain compliance.***

62. On April 29, 2025, Triller issued a press release touting BKFC's growth as a lucrative asset under the Company's control, stating, in relevant part:

> Bare Knuckle Fighting Championship (BKFC), The World's Fastest Growing Combat Sports Promotion, ***under Triller Group Inc*** , [*sic*] continued its remarkable rise last Friday with a sold-out show at the Astro Theater in Omaha and a lineup of undefeated contenders delivering unforgettable performances.
>
> As BKFC expands into new markets, sells out iconic venues, and dominates streaming platforms, its momentum has never been stronger. With the full backing of Triller, the promotion has become a magnet for top-tier talent and a prime destination for combat sports fans seeking raw, unfiltered action.

* * *

> With a mix of elite talent, growing global recognition, and an unmatched fan-first experience, BKFC stands as the most exciting, fastest-growing force in all of combat sports.

63. The statements referenced in ¶¶ 56, 58, and 61-62 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Triller's control over and consolidation of BKFC was tenuous, overstated, and/or non-existent; (ii) Triller could not timely file one or more of its periodic financial reports with the SEC as required by the NASDAQ's listing requirements, in part, because of accounting issues related to the foregoing; (iii) as a result of all the foregoing, Triller was at an increased risk of being delisted from the NASDAQ; (iv) accordingly, Triller's disclosure controls and procedures were deficient, the full scope and severity of issues with its financial controls were understated, and the overall benefits of the Merger were overstated; (v) Defendants likewise overstated Triller's ability to address its non-compliance with the NASDAQ's listing requirements; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

64. On May 23, 2025, during post-market hours, Triller issued a press release announcing its receipt of another delinquency notification letter from the

NASDAQ Staff because of its failure to timely file its Q1 2025 10-Q with the SEC. The press release disclosed, in relevant part:

> [O]n May 20, 2025, [Triller] received a delinquency notification letter from the Listing Qualifications Staff of the Nasdaq Stock Market LLC ("Nasdaq") due to the Company's non-compliance with Nasdaq Listing Rule 5250(c)(1) (the "Listing Rule") as a result of the Company's failure to timely file its Quarterly Report on Form 10-Q for the period ended March 31, 2025 (the "Filing"). The Listing Rule requires listed companies to timely file all required periodic financial reports with the Securities and Exchange Commission (the "SEC").
>
> This Notice has no immediate effect on the listing of the Company's securities on Nasdaq. However, if the Company fails to timely regain compliance with the Rule, the Company's securities will be subject to delisting from Nasdaq.
>
> The Notice provides that the Company shall submit to Nasdaq a plan to regain compliance with the Nasdaq Listing Rule no later than June 16, 2025.

65. On this news, Triller's stock price fell $1.50 per share, or 19.74%, to close at $6.10 per share on May 27, 2025, the next trading day. Despite this decline in the Company's stock price, Triller securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, BKFC, Triller's post-Merger business and financial prospects, and its ability to address its non-compliance with the NASDAQ's listing standards.

66. For example, the same May 23, 2025 press release cited above touted Triller's ability to address the NASDAQ Staff's latest letter, stating, in relevant part:

> If Nasdaq accepts the Company's plan, then Nasdaq may grant the Company up to 180 calendar days from the Filing's due date, or until October 13, 2025, to regain compliance. If Nasdaq does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a Nasdaq Hearings Panel.
>
> ***The Company is working diligently to complete its Form 10-Q and 10-K and expects to file its Form 10-Q and 10-K as soon as practicable.***

67. On June 2, 2025, Triller issued a press release "announc[ing] the completion of its strategic review, resulting in the reorganization of the Group into three interconnected core business units"—namely, "Social Media (Triller App)", "Fintech/Financial Service (AGBA Group)", and "***Combat Sports (BKFC)***". The press release stated, *inter alia*:

> As the Company enters into an exciting new phase of growth, it is implementing an accelerated 6-month timeline for development, financing, and rapid scaling of the Group's three core units.
>
> * * *
>
> BKFC is experiencing another banner year and is rapidly expanding its passionate global audience, spurred on by its visionary leader David Feldman. ***BKFC has significant synergies with Triller Group's two other core businesses, and the Company is working to support and explore additional revenue streams for BKFC. The Company believes 2025 will be another breakthrough year for BKFC, and it is not exploring any scenarios that would affect its majority control over BKFC.***

68. The press release further represented, *inter alia*, that "***current and future shareholders should anticipate a period of unprecedented rapid development***" and "***an acceleration of the vision outlined since the merger in***

***October 2024***", and that "Triller Group is committed to its core principles of collaboration, innovation, and transparency, with further updates to be shared in the coming months."

69. On August 22, 2025, Triller issued a press release announcing its receipt of another delinquency notification letter from the NASDAQ Staff because of its failure to timely file its 2024 10-K, Q1 2025 10-Q, and Q2 2025 10-Q with the SEC. The press release continued to assure investors that "***[t]he Company is working diligently to complete its Delinquent Filings and expects to file its Delinquent Filings as soon as practicable***", while reassuring investors that, "[o]n August 19, 2025, the Company received an extension letter . . . from Nasdaq, which has granted a further extension of time to enable the Company to file the Delinquent Filings on or before October 13, 2025."

70. On October 20, 2025, Triller issued a press release announcing its receipt of a delisting determination letter from the NASDAQ Staff because of its failure to timely file its 2024 10-K, Q1 2025 10-Q, and Q2 2025 10-Q with the SEC. This press release, too, assured investors that Triller was taking necessary steps to prevent the NASDAQ from delisting its securities, stating, in relevant part:

> [O]n October 14, 2025, [Triller] received a delisting determination letter from the Listing Qualifications Staff of the Nasdaq Stock Market LLC ("Nasdaq") indicating that, unless the Company timely requests a hearing before the Nasdaq Hearings Panel (the "Panel"), the Company's common stock would be subject to suspension and delisting from the Nasdaq Capital Market at the opening of business on October 23, 2025 due to the Company's non-compliance with Nasdaq's filing

> requirements set forth in Listing Rule 5250(c)(1) (the "Listing Rule") for its failure to timely file its Form 10-K for the year ended December 31, 2024, and its Forms 10-Q for the periods ended March 31, 2025 and June 30, 2025, respectively (collectively, the "Delinquent Filings").
>
> * * *
>
> ***The Company intends to request a hearing before the Panel; the hearing request will result in a stay of any suspension or delisting action for a period of 15 days from the date of the request, subject to the Panel's further review and grant of an extended stay.*** The Panel will notify the Company of its conclusion as soon as practicable, but in any event no later than 15 calendar days following the deadline to request the hearing.

71. The statements referenced in ¶¶ 64 and 66-70 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Triller's control over and consolidation of BKFC was tenuous, overstated, and/or non-existent; (ii) Triller could not timely file one or more of its periodic financial reports with the SEC as required by the NASDAQ's listing requirements, in part, because of accounting issues related to the foregoing; (iii) as a result of all the foregoing, Triller was at an increased risk of being delisted from the NASDAQ; (iv) accordingly, Triller's disclosure controls and procedures were deficient, the full scope and severity of issues with its financial controls were understated, and the overall benefits of the Merger were overstated; (v) Defendants likewise overstated Triller's ability to address its non-compliance

with the NASDAQ's listing requirements; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

72. On November 21, 2025, during post-market hours, Triller issued a press release announcing its receipt of an additional delisting determination letter from the NASDAQ Staff because of its failure to timely file its Q3 2025 10-Q with the SEC. The press release disclosed, in relevant part:

> [O]n November 17, 2025, [Triller] received an additional delisting determination letter from the Listing Qualifications Staff of the Nasdaq Stock Market LLC ("Nasdaq") indicating that, ***since it failed to timely file its Form 10-Q for the period ended September 30, 2025, this serves as an additional basis for delisting***.
>
> On October 14, 2025, the Company received a delisting determination letter from the Nasdaq Listing Qualifications Staff indicating that, unless the Company timely requests a hearing before the Nasdaq Hearings Panel (the "Panel"), the Company's common stock would be subject to suspension and delisting from the Nasdaq Capital Market at the opening of business on October 23, 2025 due to the Company's non-compliance with Nasdaq's filing requirements set forth in Listing Rule 5250(c)(1) for its failure to timely file its Form 10-K for the year ended December 31, 2024, and its Forms 10-Q for the periods ended March 31, 2025 and June 30, 2025, respectively.

73. On this news, Triller's stock price fell $0.71 per share, or 14.7%, to close at $4.12 per share on November 24, 2025, the next trading day. Despite this decline in the Company's stock price, Triller securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, BKFC,

Triller's post-Merger business and financial prospects, and its ability to address its non-compliance with the NASDAQ's listing standards.

74. For example, in the same November 21, 2025 press release cited above, Triller assured investors that it "has requested to appeal the delisting determination and will attend the hearing ***to demonstrate its ability to regain and sustain long-term compliance***."

75. On December 9, 2025, Triller issued a press release announcing that it had secured an extension to regain compliance with the NASDAQ's listing requirements, stating, *inter alia*:

> [T]he Nasdaq Hearings Panel has granted an extension period for the Company to regain compliance with its listing requirements on The Nasdaq Stock Market.
>
> Following a hearing held on November 25, 2025, the Panel has granted Triller an exception period subject to the Company satisfying the following conditions:
>
> - File its 2024 Form 10-K and delinquent Forms 10-Q for the quarters ended March 31, June 30, and September 30, 2025 on or before December 24, 2025;
> - Regain compliance with the $1.00 minimum bid-price requirement on or before February 27, 2026; and
> - File its 2025 Form 10-K on or before March 31, 2026.
>
> ***The Company appreciates the Panel's acknowledgement of the substantial progress achieved since the October 2024 business combination and is committed to meeting all stipulated conditions.***

76. The press release also assured investors that "[t]he Company continues to advance its integrated creator-economy platform across its three core pillars", including "***combat-sports content and streaming***[.]"

77. The statements referenced in ¶¶ 72 and 74-76 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Triller's control over and consolidation of BKFC was tenuous, overstated, and/or non-existent; (ii) Triller could not timely file one or more of its periodic financial reports with the SEC as required by the NASDAQ's listing requirements, in part, because of accounting issues related to the foregoing; (iii) as a result of all the foregoing, Triller was at an increased risk of being delisted from the NASDAQ; (iv) accordingly, Triller's disclosure controls and procedures were deficient, the full scope and severity of issues with its financial controls were understated, and the overall benefits of the Merger were overstated; (v) Defendants likewise overstated Triller's ability to address its non-compliance with the NASDAQ's listing requirements; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

78. On December 30, 2025, shortly after markets opened, Triller issued a press release announcing its receipt of "a determination letter from a Nasdaq Hearings Panel on December 26, 2025, confirming the suspension of trading on the

Nasdaq Stock Market effective at the open of the market on December 30, 2025 and delisting of the Company's securities", "stem[ming] from the Company not having been able to file two periodic reports by a deadline of December 24, 2025 set by the Hearings Panel." The press release further disclosed, in relevant part:

> ***The filing delay is attributable primarily to one remaining technical matter involving the consolidation of accounts for a U.S.-based operation within Triller Group [*i.e., *BKFC].***
>
> * * *
>
> The imposed timeline does not account fully for the substantial remediation efforts that the Company has already achieved in resolving non-recurring integration challenges following the October 2024 business combination with legacy Triller Corp. ***The Company's team, in collaboration with its advisors and auditors, has spent more than a year addressing all accounting and audit matters related to legacy Triller Group's pre-merger operations. Prior to the merger's closing, the Company (then operating as AGBA) was in full compliance with all Nasdaq listing requirements.***
>
> ***The Company is also in the final stages of implementing a comprehensive upgrade to its accounting systems and processes*** in partnership with a leading accounting and finance consulting firm in Los Angeles.
>
> * * *
>
> The Company has retained Jacob S. Frenkel with Dickinson Wright PLLC as counsel to appeal the decision of the Hearings Panel and pursue all possible legal challenges to the Hearings Panel's decision and the Nasdaq's suspension of trading and delisting of our securities.

79. On this news, Triller's stock price fell $3.38 per share, or ***91.35%***, over the following two trading sessions, to close at $0.32 per share on December 31, 2025.

**Post-Class Period Developments**

80. On January 26, 2026, Triller filed a current report on Form 8-K with the SEC, disclosing that its "Audit Committee of the board of directors . . . , based on the recommendation of management concluded that [BKFC] . . . should be deconsolidated in the Company's consolidated financial statements form [*sic*] the acquisition date by AGBA . . . on October 15, 2024 (the 'Acquisition Date')." The filing explained that, "[w]hile the Company held a majority equity interest in BKFC from the Acquisition Date, it lost the control over the BKFC and no longer possessed the power to direct the activities or key decisions that most significantly impacted BKFC's economic performance, as required for consolidation under ASC 810, Consolidation." Accordingly, "[b]ased on the control analysis, the Company . . . accounted its investment in BKFC at cost under ASC 321, from the Acquisition Date, rather than consolidating BKFC as a subsidiary in its consolidated financial statements."

81. The same day, Triller finally filed its 2024 10-K, Q1 2025 10-Q, Q2 2025 10-Q, and Q3 2025 10-Q with the SEC. The 2024 10-K belatedly disclosed that, "[a]s of December 31, ***2024***, our management assessed the effectiveness of our internal control over financial reporting" and "identified a material weakness related to the Company's failure to properly evaluate and apply consolidation accounting standards to the investment in [BKFC], whereby BKFC should be

classified as investment at cost less impairment in the Company's consolidated financial statements for the acquisition by the Company on October 15, 2024."

82. Triller's securities were ultimately suspended from trading on the NASDAQ from December 30, 2025 to April 15, 2026—the day after the Company satisfied the NASDAQ's conditions to resume trading by demonstrating its current compliance with the NASDAQ's listing rules

83. Triller most recently received a notice of non-compliance from the NASDAQ Staff on September 2, 2026 and, as of the time of the filing of this Complaint, its common stock currently trades for pennies.

84. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Regulation S-K Item 303**

85. Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Triller to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants failed to disclose, *inter alia*, that Triller's control over and consolidation of BKFC was tenuous, overstated, and/or non-existent, and that the Company was unable to timely file its periodic financial reports with the SEC, in part, because of the foregoing. Defendants' failure to disclose these issues violated

Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

**SCIENTER ALLEGATIONS**

86. During the Class Period, Defendants had both the motive and opportunity to commit fraud. For example, during the Class Period, Defendant Diamond enriched himself by over $2 million by selling over a million shares of the Company's common stock at artificially inflated prices.

87. Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. The Legacy Triller assets that the Company purportedly acquired in the Merger were of paramount significance to the Company's investment thesis and future performance and operations, as exhibited by, *inter alia*, the Company renaming itself "Triller Group Inc."—*i.e.*, under the acquired business's brand name—and domesticating in the U.S. as part of consummating the Merger. BKFC, in particular, was widely touted as one of the most valuable, if not ***the*** most valuable, asset that Triller purportedly acquired and controlled post-Merger. Accordingly, Defendants were undoubtedly laser-focused on integrating Legacy Triller's businesses, including BKFC, into the Company, and well aware of the related accounting issues that prevented the Company from timely filing periodic financial reports with the SEC. Likewise, Defendants were highly focused

on the Company's compliance (or lack thereof) with the NASDAQ's listing requirements, as shown by the numerous, highly specific statements they made in press releases and SEC filings regarding their interactions with the NASDAQ throughout the Class Period. Such statements, too, show that Defendants were undoubtedly fully aware of the true scope and severity of the issues that prevented the Company from maintaining compliance with the NASDAQ's listing standards. Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

88. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Triller securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

89. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Triller securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to

Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Triller or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

90. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

91. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

92. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Triller;
- whether the Individual Defendants caused Triller to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Triller securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

93. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

94. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Triller securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Triller securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

95. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

96. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**<u>COUNT I</u>**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

97. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

98. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

99. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly

engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Triller securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Triller securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

100. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Triller securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Triller's finances and business prospects.

101. By virtue of their positions at Triller, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

102. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Triller, the Individual Defendants had knowledge of the details of Triller's internal affairs.

103. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Triller. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Triller's businesses, operations, future financial condition and future prospects. As a result of the dissemination of

the aforementioned false and misleading reports, releases and public statements, the market price of Triller securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Triller's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Triller securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

104. During the Class Period, Triller securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Triller securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Triller securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Triller securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

105. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

106. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

107. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

108. During the Class Period, the Individual Defendants participated in the operation and management of Triller, and conducted and participated, directly and indirectly, in the conduct of Triller's business affairs. Because of their senior positions, they knew the adverse non-public information about Triller's misstatement of income and expenses and false financial statements.

109. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Triller's financial condition and results of operations, and to correct

promptly any public statements issued by Triller which had become materially false or misleading.

110. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Triller disseminated in the marketplace during the Class Period concerning Triller's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Triller to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Triller within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Triller securities.

111. Each of the Individual Defendants, therefore, acted as a controlling person of Triller. By reason of their senior management positions and/or being directors of Triller, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Triller to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Triller and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

112. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Triller.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: October 14, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor

Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

SCHALL, BROWN & SCHWARTZ LLP
Brian Schall (SBN 290685)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (310) 301-3335
brian@schallfirm.com

SCHALL, BROWN & SCHWARTZ LLP
Andrew J. Brown (SBN 160562)
Brian O. O'Mara (SBN 229737)
501 W. Broadway, Suite 1490
San Diego, California 92101
Telephone: (310) 301-3335
andrew@schallfirm.com
omara@schallfirm.com

*Attorneys for Plaintiff*